**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MOHAMEDELFATIH AHMED ADAM ELJALABI, | : : | |
| Plaintiff, | : : | Civil Action No.    21-1730 (RC) |
| v. | : : | Re Document Nos.:  5, 8 |
| ANTONY BLINKEN, *et al.*, | : : | |
| Defendants. | : | |

## MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Mohamedelfatih Ahmed Adam Eljalabi brings this suit seeking a writ of mandamus and injunctive relief to compel Defendants to act on and adjudicate the petition for a spousal visa for his wife, Razaz Mukhier Altaher Ali, which has been pending for over two years. His claims are brought against Defendants Antony Blinken, Secretary of the U.S. Department of State ("DOS"); Richard Visek, Acting Legal Adviser of DOS; Ian Brownlee, Acting Assistant Secretary of the Bureau of Consular Affairs, DOS; Merrick Garland, Attorney General of the United States ("AG"); Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security ("DHS"); Tracy Renaud, Acting Director of the U.S. Citizenship and Immigration Services ("USCIS"); Christopher Wray, Director of the Federal Bureau of Investigation ("FBI"); and Brian Shukan, Chargé de' Affaires of the U.S. Embassy in Khartoum (collectively, "Defendants").

Mr. Eljalabi alleges that Defendants unlawfully withheld and unreasonably delayed action on Ms. Ali's visa application in violation of the Administrative Procedure Act ("APA"). Further, he contends that this process has been unreasonably and intentionally delayed pursuant to DHS's Controlled Application Review and Resolution Program ("CARRP"), a program that he claims failed to undergo the public notice and comment protocols required by the APA. Now before the Court are Defendants' motion to dismiss and Mr. Eljalabi's motion for summary judgment. Defendants move to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) on the grounds that the petition names officials who cannot provide the requested relief and that it fails to state legally sufficient claims. Mr. Eljalabi moves for summary judgment on the grounds that Defendants have failed to fulfill their non-discretionary duty under the APA and Mandamus Act to process, investigate, and adjudicate Ms. Ali's visa application within a reasonable period of time.

For the reasons set forth below, the Court holds that Mr. Eljalabi has failed to state a claim with respect to both CARRP and the unreasonableness of delay. As a result, the Court grants Defendants' motion to dismiss and denies Plaintiff's motion for summary judgment.

## II.  BACKGROUND

### A.  Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuances of visas to various categories of immigrants seeking to enter the United States. *See* 8 U.S.C. § 1154; 8 C.F.R. §§ 204.1(a)(1), (b); *Arab v. Blinken*, No. 21-cv-1852, 2022 WL 1184551, at *1 (D.D.C. Apr. 21, 2022). A United States citizen or lawful permanent resident seeking to obtain lawful permanent resident status on behalf of their spouse must file a Form I-130, Petition for Alien Relative, with USCIS. *Arab*, 2022 WL 1184551, at *1. If USCIS

approves the petition, the case is forwarded to the National Visa Center ("NVC"), which is the DOS visa processing center. *Id.* (citing 8 C.F.R. § 204.2(a)(3)). After processing the requisite materials, NVC schedules an interview for the spouse with a consular officer at the U.S. embassy with jurisdiction over the applicant's place of residence. *Id.* (citing 22 C.F.R. § 42.62). Following the completion of the interview, the consular officer will either issue the visa or refuse the visa application. *Id.* (citing 22 C.F.R. § 42.81(a)).

### B. Factual Background

In February 2019, Mr. Eljalabi, a lawful permanent resident of the United States, filed an I-130 visa petition with USCIS on behalf of his wife, Razaz Mukhier Altaher Ali, a Sudanese national. Pet. for Writ of Mandamus and Compl. for Injunctive Relief ("Pet.") ¶¶ 1, 6, 14, ECF No. 1. Mr. Eljalabi's goal was to obtain lawful permanent resident status for Ms. Ali so that she could join him in the U.S. *Id.* ¶ 15. USCIS approved Mr. Eljalabi's petition in February 2020, and Mr. Eljalabi and Ms. Ali paid the mandatory application fees. *Id.* ¶¶ 14, 25. To date, Ms. Ali has not been scheduled to attend a consular interview and, thus, her case has yet to be fully adjudicated. Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Opp'n) at 11, ECF No. 7; Defs.' Mot. Dismiss ("Defs.' Mot.") at 2–3, ECF No. 5; 22 C.F.R. § 42.62.[1] Mr. Eljalabi and Ms. Ali have

---

[1] As of the publication of this Opinion, Mr. Eljalabi's petition is on hold for further processing by NVC. The NVC status checker states that, "Due to the numerical limitations on immigrant visa issuance prescribed by law, this petition is not eligible for further processing at this time. The National Visa Center (NVC) will retain the petition until an immigrant visa becomes available. The NVC will notify the petitioner, principal applicant, or attorney of record when this petition is eligible for further processing. The principal applicant should not make any firm plans such as disposing of property, giving up jobs, or making travel arrangements at this time." Bureau of Consular Affairs, U.S. Department of State, *Visa Status Check*, https://ceac.state.gov/CEACStatTracker/Status.aspx?App=NIV (last visited July 14, 2022). Although neither party alerted the Court to this development, the Court may take judicial notice of this update. *See Dastagir v. Blinken*, 557 F. Supp. 3d 160, 163 n.3 (D.D.C. 2021) ("The Court takes judicial notice of information posted on government websites without transforming the Government's motion into one for summary judgment.").

inquired as to the status of Ms. Ali's visa application on numerous occasions but received no meaningful responses. Pet. ¶ 16. According to Mr. Eljalabi, Defendants' failure to adjudicate the visa application "has had a profound and negative impact on the lives of [Mr. Eljalabi] and his wife." *Id.* ¶ 18.

Due to the March 2020 onset of the COVID-19 global pandemic, DOS suspended routine visa services at the U.S. embassy in Khartoum, Sudan, as with all U.S. embassies and consulates around the world. *See Suspension of Routine Visa Services*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html (July 22, 2020). In July 2020, DOS allowed embassies and consulates to begin a phased resumption of routine visa services. *Id.* Currently, visa services are being offered on a post-by-post basis consistent with DOS safety guidance and the COVID-19 conditions where each post is located. *See Visa Services Operating Status Update*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/News/visas-news/visa-services-operating-status-update.html (Nov. 19, 2021). Visa services at the U.S. embassy in Khartoum remain suspended, and thus, the operational impacts of COVID-19 have delayed the scheduling of Ms. Ali's consular interview. *See Visas*, U.S. Embassy in Khartoum, https://sd.usembassy.gov/visas/ (last visited July 14, 2022).

### C. Procedural Background

Mr. Eljalabi filed the instant petition "to compel the Defendants to take action on and adjudicate" Ms. Ali's visa application. Pet. ¶ 1. He alleges that Defendants are unlawfully withholding or unreasonably delaying action on Ms. Ali's visa application and have failed to carry out the adjudicative functions delegated to them by law and in violation of the APA and the Mandamus Act. *Id.* ¶¶ 19, 27–29. Additionally, Mr. Eljalabi requests declaratory judgment that

CARRP violates: (1) the INA; (2) Article 1, Section 8, Clause 4 of the United States Constitution (the "Naturalization Clause"); (3) the Fifth Amendment to the United States Constitution; and (4) the APA.  *Id.* at 9.  Further, Mr. Eljalabi requests that this Court enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them from applying CARRP to the processing and adjudication of Ms. Ali's visa application.  *Id.*  Finally, Mr. Eljalabi requests that this Court mandate that Defendants process Ms. Ali's application within fifteen calendar days (or as soon as reasonably possible).  *Id.* at 10.

Defendants move to dismiss the claims against officials from DHS, USCIS, FBI and the AG under Rule 12(b)(1) as moot.  Defs.' Mot. at 5.  With respect to Mr. Eljalabi's CARRP and unreasonable-delay challenges, Defendants move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.  *Id.* at 1–2, 15.  Mr. Eljalabi opposes the motion and simultaneously moves for summary judgment on his APA claim.  Pl.'s Opp'n at 6; Pl.'s Mot. Summ. J. ("Pl.'s MSJ") at 1, ECF No. 8.

### III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require plaintiffs to properly "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  However, a motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  A court considering a Rule 12(b)(6) motion presumes that the complaint's factual allegations are true and construes them in the light most favorable to the plaintiff.  *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Nevertheless, "[to] survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

5

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To that end, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.

## IV.  ANALYSIS

Defendants move to dismiss under Rules 12(b)(1) and 12(b)(6) on three grounds: (1) that Mr. Eljalabi has improperly named officials from DHS, USCIS, FBI, and the AG; (2) that Mr. Eljalabi fails to state a claim of unreasonable delay in the adjudication of Ms. Ali's visa application; and (3) that Mr. Eljalabi's CARRP challenge fails to state a claim because it relies on conjecture.  Defs.' Mot. at 1, 5–6.  Because the Court grants the motion on the two substantive grounds on the merits and dismisses this case, it need not resolve the issue concerning the naming of specific defendants.[2]  Consequently, because this Court dismisses all of Mr. Eljalabi's claims, it also denies his motion for summary judgment.[3]

---

[2] Mr. Eljalabi's motion for summary judgment includes factual evidence not included or referenced in the Petition.  *See generally* Eljalabi Decl., ECF No. 8-2.  Evidence outside the Petition need not be considered, as the Petition contains sufficient facts to resolve Defendants' motion to dismiss.  And even if the additional factual allegations and evidence were considered, resolution of the pending motions would not be altered.  *See Arab*, 2022 WL 1184551, at *10 n.3.

[3] The Court rejects Mr. Eljalabi's argument that it should deny Defendants' motion because they failed to comply with Local Civil Rule 7(n)(1).  This rule requires that agencies involved in cases reviewing "administrative agency actions, unless otherwise ordered by the Court," file the administrative record "within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion."  LCvR 7(n)(1).  Defendants

Mr. Eljalabi provides two main reasons why Defendants' delay in adjudicating Ms. Ali's immigrant visa application is unlawful and would require this Court to compel Defendants to act. *See* Pet. ¶¶ 5–9. First, Mr. Eljalabi claims that Defendants are "intentionally delaying" Ms. Ali's visa application "because of an application of the CARRP program" and "in violation of the APA." *See id.* ¶¶ 19, 39. Mr. Eljalabi's second claim is that Defendants violated the APA by delaying the processing of Ms. Ali's I-130 application for an unreasonably long period of time, thereby failing to perform the adjudicative functions delegated to them by law. *See id.* ¶ 19. Defendants move to dismiss both of Mr. Eljalabi's claims under Rule 12(b)(6) for failure to state a claim. *See* Defs.' Mot. at 1, 6. The Court will examine each of those claims in turn.

### A.  CARRP Challenge

Defendants move to dismiss Mr. Eljalabi's CARRP challenge on the ground that this claim facially lacks merit. Defs.' Mot. at 15. Mr. Eljalabi alleges that the CARRP policy violates the APA because CARRP "intentionally delays" the applications of beneficiaries who are Muslims or beneficiaries who come from predominantly Muslim countries. Pet. ¶ 36. More broadly, Mr. Eljalabi contends that the CARRP policy is unlawful because it was neither approved by Congress nor subjected to public notice and comment as required by the APA. *Id.* ¶

---

assert that they are not required to produce an administrative record with the filing of the Motion to Dismiss, despite Mr. Eljalabi's APA claims, because the basis of the petition is agency *inaction*. *See* Defs.' Combined Reply ("Defs.' Reply") at 2, ECF No. 9. Regardless of whether Local Rule 7(n)(1) has been adequately met, this Court is not convinced that Defendants' motion should be denied on such a technical basis. *Cf. Ingram v. Dist. of Columbia*, No. 18-1598, 2021 WL 3268379 at *2 (D.D.C. July 30, 2021) (finding that a motion for summary judgment should not be dismissed in a "cursory fashion" for failure to comply with a local rule). Further, it is the general practice of other courts in this District to waive compliance with LCvR 7(n)(1) where, as here, "the administrative record is not necessary for [the court's] decision." *See Arab*, 2022 WL 1184551, at *10 n.2 (alteration in original) (quoting *Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018).

37.[4]  Defendants, however, contend that this allegation fails to satisfy the applicable pleading standard because: (1) Mr. Eljalabi offers no factual allegations beyond mere speculation; and (2) CARRP is a USCIS policy that does not extend to non-DHS parties (here, the AG, FBI, and DOS).  Defs.' Mot. at 15–16.  Defendants maintain that USCIS completed its role in processing Ms. Ali's application when it approved Mr. Eljalabi's petition and sent it to the NVC.  *Id.* at 5.

This Court has previously considered a CARRP claim under Rule 12(b)(6) in *Mahmood* and dismissed it because it was based solely on "information and belief" and "unsupported by any factual allegations specific to [Plaintiff's] application."  *Mahmood v. U.S. Dep't Homeland Sec.*, No. 21-cv-1262, 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021); *see also Dastagir*, 557 F. Supp. 3d at 169 n.7 (dismissing CARRP claim alleging unreasonable visa delay based on "information and belief" for failing to "set forth any factual allegations to support it" (quoting *Ghadami v. U.S. Dep't of Homeland Sec.*, 2020 WL 1308376, at *6 (D.D.C. Mar. 19, 2020))).  Relatedly, courts in this District have consistently held that "[i]f CARRP does not apply to plaintiffs, and they have not been affected by it, then they have no standing to pursue a claim based on it."  *Ghadami*, 2020 WL 1308376, at *6; *see also Abbas v. U.S. Dep't of Homeland Sec.*, No. 20-cv-03192, 2021 WL 3856625, at *2 n.3 (D.D.C. Aug. 29, 2021) (finding that "[m]erely invoking the term CARRP does not automatically result in a grant of Article III jurisdiction" to a CARRP claim based "on information and belief" when CARRP did not apply to the plaintiff for failure to "allege[] an "injury-in-fact").

---

[4] Mr. Eljalabi also asserts in his petition that CARRP violates the INA, the Naturalization Clause, and the Fifth Amendment.  Pet. at 9.  However, he fails to specify anywhere on the record how Defendants' actions have violated any of his purported rights under these provisions.  Courts in this Circuit hold that underdeveloped arguments such as these are deemed waived.  *See e.g., Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived.").

Here, Mr. Eljalabi's "information and belief" that CARRP is implicated in the delay of Ms. Ali's I-130 application is speculative and unsupported by any specific factual allegation. *See* Pet. ¶¶ 35–39.[5]  Mr. Eljalabi alleges that "DOS regularly works with DHS when carrying out background and security investigations that delay the visa adjudication process." *Id.* ¶ 35. Further, Mr. Eljalabi alleges that "USCIS not only uses CARRP on its own cases but actively seeks out other agencies to share that information with, such as the Department of State," and thus, "CARRP does play a role in Department of State adjudications and can be implicated in the delay in Plaintiff's case." Pl.'s Opp'n at 19.  Mr. Eljalabi, however, does not provide detail about the specific harm that CARRP inflicts upon him or his wife, focusing instead on the alleged harm that CARRP generally inflicts upon "innocent, law-abiding residents, like Plaintiff and his wife." Pet. ¶ 38.  As a result, because Mr. Eljalabi has failed to demonstrate that Ms. Ali's application was individually impacted, his alleged injury cannot meet the injury-in-fact requirement, and, thus, his CARPP claim fails. *See Ghadami*, 2020 WL 1308376, at *6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

## B.  Unreasonable Delay

The Court now assesses Defendants' motion to dismiss under Rule 12(b)(6) on the ground that the delay in scheduling Ms. Ali's interview is not unreasonable as a matter of law. *See* Defs.' Mot. at 6.  Before turning to a reasonableness analysis, this Court must determine the length of the delay at issue.  Mr. Eljalabi contends that the delay in scheduling an interview spans thirty-two months, whereas Defendants consider the period of delay to be seventeen months. Pl.'s Opp'n at 11; Defs.' Mot. at 2.  To determine the length of delay in visa processing,

---

[5] In fact, "[a] publicly available document released from USCIS as a result of FOIA requests state[s] that CARRP does not apply to I-130 visa applications." *Ghadami*, 2020 WL 1308376, at *6 n.3 (citation omitted).

similar cases have focused on the period between "the last Government action" and the "issuance of the opinion." *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *1, *4 n.3 (D.D.C. Sept. 15, 2021) (analyzing a seventeen-month delay between "the last Government action" and the opinion's issuance). The last clear Government action occurred on August 25, 2020, when Mr. Eljalabi received confirmation from the NVC that his case was "Documentarily Qualified." Pl.'s Opp'n at 5. Accordingly, the period that can be used to analyze unreasonable delay in the instant case is the roughly twenty-two-month period between NVC's last action and the issuance of this Opinion.

The APA requires agencies to "proceed to conclude a matter presented to it" in a "reasonable time" and "with due regard for the convenience and necessity of the parties." 5 U.S.C. § 555(b). Further, section 706(1) of the APA authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).[6] To evaluate whether agency action has been unreasonably delayed, the D.C. Circuit has established a six-factor test from *Telecommunications Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (cleaned up):

(1) The time agencies take to make decisions must be governed by a "rule of reason;"

(2) Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

---

[6] Under the Mandamus Act, federal courts may also issue writs of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The standard for undue delay under the APA is identical to the standard under the Mandamus Act. *See Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)).

    (4) The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

    (5) The court should also take into account the nature and extent of the interests prejudiced by delay; and

    (6) The court need not "find any impropriety lurking behind agency lassitude to find the agency action 'unreasonably delayed.'"

These factors can only be applied "if the 'record contains enough facts to evaluate the *TRAC* factors.'" *Brzezinski*, 2021 WL 4191948, at *4 (quoting *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)).

1. *TRAC* Factors 1 & 2

The first and second TRAC factors, on balance, lean in the favor of Defendants. Generally, the first *TRAC* factor is the "most important" and carries the most weight. *In re Core Commc'ns., Inc.*, 531 F. 3d 849, 855 (D.C. Cir. 2008). However, courts typically consider the first and second factors together, as both analyze whether there is "sufficient rhyme and reason to explain the Government's response time." *Dastagir*, 557 F. Supp. 3d at 166 (cleaned up); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

Despite Mr. Eljalabi's attempt to apply the timeframe established by Congress in 8 U.S.C. § 1571(b)—which states that DOS must adjudicate immigration benefits within 180 days—to the instant case, Pl.'s Opp'n at 9, there exists no statutory or regulatory framework within which DOS must adjudicate I-130 applications. The statute upon which Mr. Eljalabi relies specifically concerns the purposes and policies underpinning the now-defunct Immigration Services and Infrastructure Improvements Act of 2000, and as such, Plaintiff's reliance on a "precatory" and "non-binding" "sense of Congress," *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 n.26 (D.C. Cir. 2015), is inappropriate. Indeed, similar cases heard in this Circuit have confirmed that there is no congressionally imposed timeline for processing spousal visa

11

applications. *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 165 (D.D.C. 2021). Rather, Congress has given the executive agencies broad discretion in immigration processing matters. *See Arpaio v. Obama*, 797 F.3d 11, 16–17 (D.C. Cir. 2015); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153 (D.D.C. 2017). Absent a congressionally established timeframe, "courts typically turn to case law as a guide." *Sarlak*, 2020 WL 3082018, at *6 (citing *Skalka*, 246 F. Supp. 3d at 154).

As established above, Ms. Ali's application has been delayed for nearly two years. Ample caselaw suggests that this period of delay at issue is not unreasonable. *See e.g., Ghadami*, 2020 WL 1308376, at *8 (finding that a twenty-five-month delay was not sufficient to tilt the first two *TRAC* factors in favor of the plaintiff); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (holding that a twenty-five-month delay was not unreasonable as a matter of law). Some courts have even noted that delays lasting five years are "often not unreasonable," *Zandieh v. Pompeo*, No. 20-cv-919, 2020 WL 4346915, at *6 (D.D.C. July 29, 2020) (quoting *Sarlak*, 2020 WL 3082018, at *6), and that two-year delays in immigration visa processing "[do] not typically require judicial intervention," *Skalka*, 246 F. Supp. 3d at 153–54 (citing caselaw that even five-to-ten-year delays in the immigration context may be reasonable).

Mr. Eljalabi, however, maintains that the delay is unreasonable under the first two *TRAC* factors because Defendants have failed to "take into consideration the complexity of the task at hand or the complete timeline of [his] case." Pl.'s Opp'n at 9; *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003) (holding that because a "rule of reason . . . cannot be decided in the abstract, by reference to some number of months or years," a court should look to the "complexity of the task at hand" when determining whether a delay is unreasonable). Mr. Eljalabi alleges that I-130 visa petitions, like the one at issue here, are "much more straightforward" and "require [less] complex, fact-intensive determinations"

than adjudications like waiver applications, asylum applications, and adoption petitions do.  Pl.'s Opp'n at 10; *see also Ghadami*, 2020 WL 1308376, at *1–2 (analyzing delay of waiver of immigration restrictions); *Skalka*, 246 F. Supp. 3d at 149 (analyzing Nepalese adoption case, where "policy . . . instruct[ed] U.S. immigration officials to stop investigating and processing orphan adoptions in Nepal due to unreliability or corruption they have encountered in dealing with the Nepalese system"); *Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (analyzing delay of asylum application).  However, Mr. Eljalabi offers no factual support for his contention that spousal visa applications are less complex.  Indeed, this exact argument was rejected in *Dastagir*, where the Court held that a 29-month delay in adjudicating a spousal visa application was not unreasonable and found plaintiff's argument that such applications were somehow less "complex" than others "unconvincing."  557 F. Supp. 3d at 165–166.  Additionally, while Mr. Eljalabi's attempts to estimate the number of adjudication hours needed to reasonably adjudicate a spousal visa application are based on statistics published by the DOS concerning application types with similar eligibility requirements (*e.g.*, I-129F applications), Pl.'s Opp'n at 10–11, this assertion is based upon conjecture rather than factual support.

Further, although Mr. Eljalabi's petition has been pending with NVC for some time, the COVID-19 pandemic has resulted in a substantial backlog at the U.S. embassy in Khartoum, which, to date, has not fully resumed visa services.  *See* Defs.' Mot. at 2–3; *see also Tate v. Pompeo*, 513 F. Supp. 3d 132, 151 (D.D.C 2021) (finding that the government's determination of "how to allocate scare resources in a global pandemic outweigh[s] [visa applicants'] interests in immediate adjudication of their visas").  Given this backlog and the ongoing public health considerations impacting consular staff operations in Khartoum, the first two *TRAC* factors lean decisively in Defendants' favor.

2. *TRAC* Factors 3 & 5

On the other hand, the third and fifth *TRAC* factors lean more in Mr. Eljalabi's favor. These factors ask courts to consider the delay's negative effects on the "human health and welfare" at stake and "the nature and extent of [these] interests" as tilting towards unreasonableness. *See TRAC*, 750 F.2d at 80. Mr. Eljalabi argues that the delay at issue "has had a profound and negative impact on the lives of [Mr. Eljalabi] and his wife." Pet. ¶ 18. This District has recognized that prolonged and indefinite separation of spouses may threaten physical and mental wellbeing. *See Didban*, 435 F. Supp. 3d at 177 (finding the third and fifth *TRAC* factors to weigh in favor of the plaintiffs considering prolonged separation of spouses); *Bagherian*, 442 F. Supp. 3d. at 95 (same); *Mahmood*, 2021 WL 5998385, at *8 (finding that diminished quality of life due to mental health disorders caused or exacerbated by delay weigh these factors "at least somewhat in Plaintiff's favor"). Although Defendants emphasize that delays are necessary to prevent the spread of COVID-19 and protect U.S. consular officials, Defs.' Mot. at 10, the nature of Mr. Eljalabi's interests and the prejudice to those interests stemming from delayed adjudication weigh in his favor.

3. *TRAC* Factor 4

The fourth *TRAC* factor, which requires courts to consider "the effect of expediting delayed action on agency activities of a higher or competing priority," weighs conclusively in favor of Defendants. *TRAC*, 750 F.2d at 80. Like the first factor, the fourth carries significant weight, *see, e.g.*, *Mashpee*, 336 F. 3d. at 1100, and the D.C. Circuit affords considerable deference to DOS's priority-setting and resource allocations. *See Milligan*, 502 F. Supp. 3d at 319 ("[D]elays stemming from resource-allocation decisions simply do not lend themselves to 'judicial reordering [of] agency priorities.'" (citation omitted)); *Arab*, 2022 WL 1184551, at *9

(holding that deference must be given to DOS's decisionmaking considering the extraordinary backlog of visas across the world).  If finding in favor of an applicant would simply "move Plaintiff to the head of the line at the expense of others waiting for the same action," courts will not compel an agency to act.  *Brzezinski*, 2021 WL 4191958, at *5.  Here, Defendants state that Mr. Eljalabi seeks to move Ms. Ali's case ahead of other pending cases, an action which is inappropriate when relief "would simply 'reorder' a queue of applicants seeking adjudication" and produce "no net gain."  *Tate*, 513 F. Supp. 3d at 149 (quoting *Sarlak*, 2020 WL 3082018, at *6); Defs.' Mot. at 10–12.

Though Mr. Eljalabi contends that rather than line-jumping, he is simply asking for the NVC and U.S. Embassy in Khartoum "to engage in the normal processing of the case," Pl.'s Opp'n at 12, he has failed to include any facts to support a reasonable inference that moving his case ahead of other applicants facing similar or longer delays would produce "net gain" or remain equitable to those other applicants awaiting adjudication.  *Tate*, 513 F. Supp. 3d at 149.  Mr. Eljalabi also counters that Defendants have neither established the existence of a queue nor disclosed either his place in that queue or the procedures of determining the order of adjudications.  Pl.'s Opp'n at 12.  To bolster his argument, he relies on out-of-circuit caselaw to suggest that there is likely no queue to be reordered.  *Id.*  However, those cases exist outside of the I-130 context, whereas cases in this District considering I-130 petitions routinely hold that this factor "conclusively favors defendants" in such circumstances.  *See Mahmood*, 2021 WL 5998385, at *8 (holding that the fourth *TRAC* factor favors defendants when expediting plaintiff's claim would do nothing more than fast-track plaintiff's case at the expense of similarly waiting applicants); *Ghadami*, 2020 WL 1308376, at *9 (explaining that "the fourth *TRAC* factor . . . weighs in favor of the government" where expediting review of a plaintiff's

15

application would merely put him at the head of the queue at the expense of other applicants); *Dastagir*, 557 F. Supp. 3d at 167 (finding that the fourth factor favors the government where compelling adjudication would allow the plaintiff to "jump the line").

That DOS procedures, like much else, have been affected by the global COVID-19 pandemic reflects DOS's legitimate discretion in deciding the priority of its various responsibilities during a time of international crisis. Defendants state that the delay here "is due to reasonable and prudent measures to protect safety and health." Defs.' Mot. at 10. Thus, as in *Tate*, "the delay in processing plaintiffs' visa applications is a function of the 'Secretary of State's decision to reduce consular processing [in order to] protect the health of consular officers and the public' in light of the COVID-19 pandemic." *Id.* at 9–10 (quoting *Tate*, 513 F. Supp. 3d at 149). This Court is inclined to agree with earlier decisions from this District finding that "issues like a pandemic and local government restrictions are out of the control of the Government and are justifications for delay that the Court is ill-equipped to second guess" and that "these circumstances offer sufficient 'rhyme and reason' to explain the Government's response time." *Dastagir*, 557 F. Supp. 3d at 166; *see also Mohammad*, 548 F. Supp. 3d at 169–70 (reaching the same holding). For these reasons, the Court finds that the fourth *TRAC* factor favors Defendants.

### 4. *TRAC* Factor 6

Finally, the sixth *TRAC* factor does not weigh in either party's favor. This factor states that "finding impropriety lurking behind agency lassitude" is not necessary for finding agency action unreasonably delayed. *TRAC*, 750 F.2d at 80. Defendants' contention that this factor weighs in their favor because Plaintiff has not alleged bad faith, *see* Defs.' Mot. at 14–15, is inconsistent with this Court's understanding of this factor. As noted in *Brzezinski*, "[i]n

instances where a plaintiff makes no allegation of bad faith, courts have often either chosen not to apply the sixth TRAC factor at all or acknowledged that this does not count against the plaintiff's case." 2021 WL 4191958, at *6 (citation omitted); *see also Mahmood*, 2021 WL 5998385, at *9 (same). Mr. Eljalabi is understandably frustrated that Defendants' response to the pandemic and their processing time has resulted in profound hardship for him and his wife. Nevertheless, he does not allege any impropriety on the part of Defendants. Accordingly, this factor does not affect the outcome of the instant case.

### 5. Weighing the *TRAC* Factors

In sum, *TRAC* factors one, two, and four weigh in favor of Defendants while factors three and five weigh somewhat in favor of Mr. Eljalabi. As noted, the sixth factor is inconclusive. As in *Mahmood*, the most significant *TRAC* factors weigh in favor of the Defendants and so the delay cannot be considered unreasonable. 2021 WL 5998385, at *9; *see also Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3529, 2021 WL 5356284, at *6–8 (D.D.C. Nov. 16, 2021) (reaching same conclusion). The preceding analysis does not mean that Defendants' delay in processing Ms. Ali's application will remain reasonable *indefinitely*, and this Court sympathizes with Mr. Eljalabi's concerns. Nevertheless, application of the *TRAC* factors to this case demonstrates that the Plaintiff has failed to state a claim at this time, and therefore, this action is dismissed pursuant to Rule 12(b)(6).

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 5) is **GRANTED** and Plaintiff's motion for summary judgment (ECF No. 8) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 14, 2022                                        RUDOLPH CONTRERAS
                                                            United States District Judge